IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

JAMES C. YORK,                      )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     No.  05 C 5690
                                    )
R. JAMES NICHOLSON, SECRETARY,      )
DEPARTMENT OF VETERANS AFFAIRS,     )
                                    )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

James York ("York") originally filed a Complaint against Anthony Principi as Secretary of the United States Department of Veterans Affairs ("Department"), York's employer, charging racial discrimination and breach of a settlement agreement in violation of Title VII of the Civil Rights Act, 43 U.S.C. §§621-634. In an Amended Complaint York added a claim that Department had further discriminated against him by failing to promote him.

At the close of discovery Department moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56, and York responded to its motion. For the reasons set forth in this memorandum opinion and order, Department's motion is granted in all respects and this action is dismissed.

### Summary Judgment Standard

Well-established Rule 56 principles impose on Department the burden of establishing a lack of genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must consider the evidentiary record in

the light most favorable to nonmovant York and draw all reasonable inferences in his favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment, York must produce "more than a mere scintilla of evidence to support [his] position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). If the record reveals that no reasonable jury could find in favor of York, summary judgment must be granted (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

To enable this Court to evaluate that possibility, what follows is a summary of the facts, viewed in favor of nonmovant York under the criteria described by Rule 56 and implemented by this District Court's LR 56.1.[1] That posture obviates the need to repeat "according to York" or the like, or to identify any conflicting account, though the latter is sometimes included for purely informational purposes.

---

[1] LR 56.1 implements Rule 56 by requiring each party to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which are not. This opinion cites Department's statement as "D. St.--" and York's response as "Y. St.--." Where an assertion in Department's statement is undisputed by York, the opinion includes only a citation to the original statement. "D." and "Y." designations are also used in referring to all other documents submitted by the parties.

Background

York is an African-American man who has been an employee of Department's Hines Veterans Administration Hospital ("Hines") since 1975 (D. St. ¶5). Since a promotion in 1982 York has primarily worked in Hines' Environmental Management Service division, which provides laundry, sanitation and housekeeping services for the entire hospital (id. ¶¶5-6). During the largest part of his tenure at Hines York's position has been that of housekeeping aid supervisor, and in that post he was and is paid at the WS-05 pay level (id. ¶5). York's duties in that position have included supervising a team of approximately eight employees and ensuring that Hines had the necessary linens for its daily operations (id. ¶6).

In December 2003 York was selected to fill the position of Acting Textile Care Manager after a competitive bidding process (id. ¶7). That position was intended to be temporary because Hines had plans to outsource the textile care facility to an outside contractor (id. ¶8). When Hines eventually did so York returned to his former position, where he remains today (id. ¶9).

York's three decades at Hines have not been without conflict. In October 1992 he filed a lawsuit against Hines alleging that he had not been selected for the position of Assistant Chief of the Environment Management Services because of his race (D. St. ¶10). That suit was dismissed by one of this

3

Court's colleagues via summary judgment in February 1995, a decision that was affirmed by the Seventh Circuit (id. ¶11). Next York filed another lawsuit in September 1995 alleging racial discrimination and retaliation when the Department abolished another position for which he applied (id. ¶12). That suit was also dismissed when another District Judge granted summary judgment in Department's favor in June 1997 (id. ¶13).

York filed additional discrimination complaints before 2001, all of which became the subject of a settlement agreement ("Agreement") that York and the Department entered into on July 11, 2001 (D. St. ¶¶14-15). Under the terms of the Agreement York agreed to withdraw all pending discrimination complaints and to waive all discrimination claims that arose before the date of the Agreement (id. ¶16). For its part Department agreed to place York in an "Individual Development Plan" ("Plan") that "[was] designed to assist him plan and carry out an organized approach to enhance his current job performance, as well as a means to achieve any career goals he may have" (id.). But those terms did "not guarantee placement in any designated or specific position," and York understood that the Agreement did not require Department to promote him (id. ¶17). To support the goals of the Plan, the Agreement provided that York could choose "his own personal mentor" or his supervisor to "work with him" on the Plan (id. ¶18). Finally, Department agreed to pay York $1,000 (id. ¶19).

4

After the parties signed the Agreement York was paid $1,000 and began working with a mentor he selected, Hines' Associate Director Maryann Semrad ("Semrad")(D. St. ¶22). That relationship went very well, but it ended when Semrad was transferred to another hospital (id.). Charles Williams ("Williams"), Chief of Environmental Management Services, then acted as a replacement mentor for York (id. ¶¶23-25). Under Williams' mentorship York had total autonomy over the textile care facility and took on the responsibility for purchasing equipment and supplies, as well as developing operating procedures for the laundry plant operation (id. ¶26).

Since he entered into the Agreement York has applied unsuccessfully for several positions within Hines, including Assistant Chief of the Environmental Management Services division (a GS-12 position) and several runs at the Chief position (a GS-13 position)(D. St. ¶29). York opted not to apply for any positions at the GS-7 or GS-9 levels because he believed that his military experience, education and many years of employment at Hines rendered him overqualified for those lower-level positions. Each time he applied but was rejected for a position, York believed that Department breached the Agreement (id. ¶31). In fact, each time he was not selected he filed an administrative claim charging discrimination and breach of the Agreement (id. ¶32).

In February 2005 Department again failed to select York for the position of Chief of Environmental Management Services (D. St. ¶37). Before choosing someone for that post Department assembled a five-member panel to review resumes, conduct interviews and communicate with the references listed by each candidate (including York)(id. ¶41). During the interviews the panel scored candidates on 11 performance-based interview questions. Four of the five members scored white male Laurin DeVine ("DeVine") higher than York (id. ¶42). Based on the panel's recommendation and on DeVine's education and experience in running the housekeeping department for a 450-bed hospital, ultimate decision-maker Jeff Gering ("Gering") offered DeVine the job (id. ¶45).

York was told that he was not selected for the position because more panel members scored DeVine higher during his interview (id. ¶47). But that rejection was once again viewed by York as (1) discrimination against him because of his race, (2) retaliation for his previous complaints and (3) a breach of the Agreement.

### Racial Discrimination Claim

To survive summary judgment on a racial discrimination claim a plaintiff may proceed under the direct or indirect method of

proving[2] that his or her employer took an adverse employment action against him or her because of race. Under the direct method York could succeed on his claim through an admission by Department or through circumstantial evidence of discrimination (see Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006)). Alternatively he may proceed under the burden-shifting method memorialized in the seminal McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) opinion.

Paul v. Theda Med. Ctr., Inc., 465 F.3d 790, 794 (7th Cir. 2006) identifies the four elements that plaintiffs such as York must first establish under that indirect method:

> (1) he was a member of a protected class; (2) he was qualified for the job in question; (3) he suffered an adverse employment action; and (4) the defendant treated other similarly-situated employees who were not members of the class more favorably.

Once York demonstrates that prima facie case, "the burden shifts to [Department] to produce evidence of a legitimate, non-discriminatory reason for its decision" (id.). If Department then produces such a reason, York must show that the proffered

---

[2] In the summary judgment context, of course, York's burden is only one of demonstrating the existence of a genuine issues of material fact, not one of proof as such (see Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994)). But the continued repetition of that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting only York's lesser burden described in this footnote, not the actual burden of persuasion.

reason is merely pretextual.

Here York does not offer any evidence that could qualify for the direct method of showing that Department discriminated against him because of his race. Instead he admits that Department informed him he was not selected for the Chief position because DeVine scored higher than York in the interview process. Hence York must proceed under the indirect method, if at all.

Even though it is not at all clear from the record that York could satisfy the fourth element of a prima facie case, Department's submission does not challenge him in those terms, arguing instead that its decision to hire DeVine was legitimate. In turn York's submission responds solely to the question whether the decision to hire DeVine, the white male candidate with more leadership experience at other hospitals and better interviewing skills, was pretextual. This opinion will address the issue as the parties have framed it.

As for the reasons supporting its choice, Department cites the already-recited facts that four of the five committee members scored DeVine higher than York during the interviews and that DeVine had prior experience running a hospital housekeeping facility when he was Director of Environmental Services of St. Frances Hospital. Gering, upon evaluating the committee's recommendation and the candidates' credentials, was satisfied

that DeVine's prior employment history demonstrated that he had the technical competencies to handle the position.

York has proffered no evidence at all to challenge that decision as merely pretextual. Though he contends that Department's reliance on the interview scores was a way to "sanitize" the decision, he offers no support for that ipse dixit. York also argues that he had an "obvious edge" over DeVine because of his many years of supervisory experience at Hines, but Department was entitled to select a candidate based on criteria other than the amount of years logged at one of its facilities.

In sum, nothing impugns the bona fides--the honesty--of Department's choice, and that is fatal to York's claim. Department's summary judgment motion as to that claim must be and is granted.

## Retaliation Claim

York also asserts that Department failed to promote him in retaliation for his history of filing racial discrimination complaints. As Kampmier v. Emeritus Corp., 472 F.3d 930, 939 (7th Cir. 2007) instructs:

> Under Title VII, unlawful retaliation occurs when an employer takes actions that "discriminate against" an employee because []he has opposed a practice that Title VII forbids.

On that score Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002) has provided the

9

definitive description of the "two (and only two) distinct routes to obtaining/preventing summary judgment" on such a retaliation claim. Here is the first path (id.):

> One, the more straightforward, the one that is unrelated to McDonnell Douglas, is to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity (filing a charge of discrimination) and as a result suffered the adverse employment action of which he complains. If the evidence is uncontradicted, the plaintiff is entitled to summary judgment. If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation.

And here is the alternative course (id.):

> The second route to summary judgment, the adaptation of McDonnell Douglas to the retaliation context, requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial.

Though his bare bones argument is hardly fleshed out, York appears to contend that there is circumstantial evidence supporting his claim that the Department failed to promote him because of his prior complaints. To that end York points to the timing of his complaints vis-á-vis his nonpromotion for the Chief position, noting that ultimate decisionmaker Gering learned about

10

York's earlier discrimination complaints before he decided that the Chief position should go to DeVine. York characterizes Gering's October 2004 discovery of those complaints and Gering's May 2005 decision not to promote York to the Chief position as an adverse employment action that followed "close on the heels" of protected expression.

But this Circuit's caselaw consistently holds lapses of even lesser magnitude--here there was a seven-month separation between the decisionmaker's awareness of York's protected activity and the award of the Chiefship to DeVine--as insufficiently proximal to imply intentional discrimination. Indeed, <u>Kampmier</u> and earlier decisions by our Court of Appeals come very close to setting a four-month gap as a bright-line rule, and York is well beyond the wrong side of that line. Most importantly, even if the temporal inferences were more suspicious (as they are not), <u>Kampmier</u>, 472 F.3d at 939 has recently reconfirmed the well-established principle that "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." In short, York's effort to invoke the first alternative--the direct method of proof--is bootless.

Nor does York fare any better in pursuing the second route, the familiar burden-shifting paradigm memorialized in <u>McDonnell Douglas</u>, 411 U.S. at 793. While <u>Stone</u>, 281 F.3d at 643 acknowledges that "<u>McDonnell Douglas</u> is designed to give the

11

plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances," York has utterly failed to meet the requirement enunciated in <u>Stone</u>, <u>id</u>. at 644 and just reiterated in <u>Kampmier</u>, 472 F.3d at 940 that he must identify a similarly situated individual who was not singled out for non-promotion.

In short, York has repeated his impermissible pattern of following an entirely legitimate (indeed, laudable) effort to seek advancement--an effort that has proved unsuccessful on the merits--with a meritless claim of a retaliatory motive on the part of the decisionmaker. Such attempted bootstrapping has again failed here.

<u>Breach of the Settlement Agreement</u>

Finally York contends that Department's failure to select him for the Chief position breached the 2001 Agreement. Specifically York argues Department's failure to promote him violated its promise to "assist him" in both enhancing his job performance and achieving "any career goal he may have." That assertion is sought to be supported solely by the proposition that "with the exception of temporary appointments he has gone backward" (Y. Mem. 10).

<u>Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.</u>, 713 F.3d 319, 321 (7th Cir. 1983), quoting <u>Fla. Educ. Ass'n v. Atkinson</u>, 481 F.3d 662, 663 (5th Cir. 1973),

12

teaches:

> A settlement agreement is a contract and as such, "the construction and enforcement of settlement agreements are governed by principles of law applicable to contracts generally."

Where as here one of the contracting parties is the federal government, <u>Funeral Fin. Sys. v. United States</u>, 234 F.3d 1015, 1918 (7th Cir. 2000) further instructs that "we must apply federal common law rules of contract interpretation" to determine whether Department has breached the Agreement's terms. That calls for interpreting the language "in an ordinary and popular sense as would a person of average intelligence and experience" (<u>id</u>.).

It cannot be said under the plain language of the Agreement that Department has failed to live up to its part of the bargain. Aided by the advice of counsel, York expressly acknowledged in the Agreement that Department "does not guarantee placement in any designated or specific position." Instead Department was obligated only to place York in the Plan and to allow him to choose a mentor to help him achieve his goals. Both parties agree that Department fulfilled those obligations. Nowhere does the Agreement obligate Department to promote York or to give him preferential treatment over better-qualified candidates. This final aspect of York's lawsuit is also a loser as a matter of law.

Conclusion

This Court has not of course looked at York's numerous earlier, and similarly unsuccessful, claims of discrimination and retaliation in reaching its decision here--it knows only of the results adverted to in the Background section. But the plain lack of merit in York's current claims, when coupled with such an extraordinary history of litigiousness, strongly suggests that he epitomizes Alexander Pope's couplet in his Essay on Criticism, pt. II:

> All seems infected that th' infected spy,
> As all looks yellow to the jaundic'd eye.

There is simply no warrant for York's invariable reaction to every setback in his commendable efforts to seek advancement--a reaction that ascribes each setback to someone's playing the race card or to someone seeking to punish York for making those efforts.

None of York's claims here is supported by evidence that creates a genuine issue of material fact, and Department is entitled to a judgment as a matter of law. As stated at the outset, its motion for summary judgment is granted in its entirety and this action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: February 12, 2007